859 So.2d 136 (2003)
Ricky E. NEWMAN
v.
RICHARD PRICE CONSTRUCTION.
No. 2002 CA 0995.
Court of Appeal of Louisiana, First Circuit.
August 8, 2003.
*138 Michael B. Forbes, Hammond, for Plaintiff-Appellant Ricky E. Newman.
Stephen W. Brooks, Jr., William G. Tabb, III, Richard J. Voelker, The Brooks Law Firm, L.L.C., Covington, for Defendant-Appellee Richard Price Construction.
Before: PARRO, McDONALD, and CLAIBORNE,[1] JJ.
PARRO, J.
An employee appeals from a judgment of the Office of Workers' Compensation Administration, granting his former employer's motion for summary judgment based on a finding that the employee had forfeited his right to workers' compensation benefits pursuant to LSA-R.S. 23:1208.[2] For the following reasons, the judgment is reversed.

Facts and Procedural History
On May 7, 2001, Ricky E. Newman (Newman) filed a disputed claim for workers' compensation, alleging that on February 12, 2001, while employed with Richard Price Construction (Price Construction), he tripped and fell while carrying steel rebar. An injury to his right leg was given as the basis for his claim. No further information about his alleged injury was provided on the claim form, which *139 indicated that the accident had been reported to his supervisor, Dennis. His claim further indicated that no indemnity benefits had been provided, nor had Price Construction authorized any medical treatment. Newman sought authorization to obtain treatment from an orthopedist, temporary total disability benefits, attorney fees, and penalties.
Subsequently, Price Construction filed a motion for summary judgment relative to Newman's entitlement to workers' compensation benefits, which was granted by the workers' compensation judge, based on the finding that Newman had forfeited his right to workers' compensation benefits, pursuant to LSA-R.S. 23:1208. From the resulting judgment, Newman appeals, contending the workers' compensation judge erred in granting summary judgment based on a finding that Newman had forfeited his right to workers' compensation benefits by violating LSA-R.S. 23:1208.

Summary Judgment
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94), 637 So.2d 467. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Rambo v. Walker, 96-2538 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
When appropriate under Articles 966 and 967, summary judgment is available in workers' compensation cases. See LSA-C.C.P. art. 966(A)(2); LSA-R.S. 23:1317(A); Pope v. Younger Bros, Inc., 96-1604 (La.App. 1st Cir.5/9/97), 693 So.2d 1287, 1289. An appellate court reviews a trial court's decision to grant a motion for summary judgment in workers' compensation cases de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Pitts v. Helmrich & Payne Drilling, 98-1345 (La.App. 1st Cir.6/25/99), 739 So.2d 335, 337, writ denied, 99-2194 (La.11/5/99), 750 So.2d 187.
The initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the nonmoving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2); Clark v. Favalora, 98-1802 (La.App. 1st Cir.9/24/99), 745 So.2d 666, 673. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Zeringue v. Karl Ott Poles & Pilings, 00-0522 (La.App. 1st Cir.5/11/01), 808 So.2d 628, 631.

Forfeiture for Violation of LSA-R.S. 23:1208
Newman argues that the trial court's granting of Price Construction's motion for summary judgment was improper, since genuine issues of material fact exist as to the issue of whether a *140 violation of LSA-R.S. 23:1208 occurred. In pertinent part, LSA-R.S. 23:1208 provides:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
This section was intended to prevent and discourage fraud in relation to workers' compensation claims. LSA-R.S. 23:1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits; therefore, the statute generally becomes applicable at the time of an employee's accident or claim. Resweber v. Haroil Constr. Co., 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7, 14. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians, or insurers, when made willfully or deliberately for the purpose of obtaining benefits. Resweber v. Haroil Constr. Co., 660 So.2d at 9. It contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. Resweber v. Haroil Constr. Co., 660 So.2d at 12.
The requirements for forfeiture of benefits under section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Constr. Co., 660 So.2d at 14. A claim under LSA-R.S. 23:1208 is appropriate for resolution by way of summary judgment. See Bibins v. St. Francis Cabrini Hospital, 00-133 (La.App. 3rd Cir.6/7/00), 768 So.2d 102, 103-106, writ denied, 00-3015 (La.12/15/00), 777 So.2d 1235.
Price Construction argues that the factual and medical evidence submitted in support of its motion demonstrates numerous and repeated misrepresentations by Newman in furtherance of his workers' compensation claim. During his deposition, when questioned about prior injuries and medical treatment, Newman testified that he had crushed the index finger on his right hand while working for a previous employer. He said that after being out of work for a few weeks, he returned to work for that employer. Newman also recalled sustaining a lower back injury in an automobile accident that had occurred 11 years earlier, for which he received a settlement in conjunction with a pending lawsuit. One year after his lower back injury, Newman fractured his left ankle while cutting grass. During his deposition, Newman said he could not recall any other injuries.
Medical records were introduced by Price Construction to show that Newman failed to state that he had also sought treatment for a March 9, 1994 injury to his left foot and ankle, which resulted when he slipped off a dock, and for a January 4, 2000 head injury from falling out of his bed. In addition to these two injuries, Newman neglected to mention that he was treated on December 10, 1990, and June 13, 2000, for two separate dog bites on his right leg.[3]
*141 Obviously, Newman's failure to disclose such information when asked in his deposition constituted a false representation. Nonetheless, a false representation alone does not result in the forfeiture of benefits. The employer must also prove that the false representation was willfully made and that it was made for the purpose of obtaining or defeating any benefit or payment.
The word "willful" has been defined as "proceeding from a conscious motion of the will; voluntary; knowingly; deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary." Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3rd Cir.5/14/97), 696 So.2d 73, 76, writ denied, 97-1582 (La.10/17/97), 701 So.2d 1330. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits. Resweber v. Haroil Constr. Co., 660 So.2d at 16. The injury to Newman's left foot and ankle, as well as his head injury, are inconsequential to his present claim. Furthermore, there is no evidence that the two dog bites on his right leg had any causative effect with respect to his claim. Based on the evidence offered in support of Price Construction's motion for summary judgment, we conclude there are genuine issues of material fact as to whether the false representations were willfully made and whether they were made for the purpose of obtaining or defeating any benefit or payment.
Moreover, in the record of his February 12, 2001 visit to the emergency room for treatment of the injury for which Newman is claiming benefits, the treating physician noted a scrape on his right leg that had occurred a few days earlier. On the other hand, the notes of the treating nurse reported a cut to his right leg that had occurred at approximately 3:00 p.m. that afternoon. The particular document on which Price Construction relies as part of its proof under LSA-R.S. 23:1208 contains inconsistencies as to when the injury occurred and the nature of the injury. Although not completely consistent with his testimony, a portion of those records supports Newman's claim of an injury occurring on February 12, 2001. Accordingly, we find that a genuine issue as to material fact exists as to whether Newman made false statements to attending hospital personnel on February 12, 2001.
Based on our findings, we conclude that the workers' compensation judge improperly granted Price Construction's motion for summary judgment relative to the LSA-R.S. 23:1208 forfeiture issue.

Forfeiture for Violation of LSA-R.S. 23:1208.1
On appeal, Price Construction also urges that the requirements for forfeiture under LSA-R.S. 23:1208.1[4] were satisfied *142 in this case. Because the workers' compensation judge did not make such a finding and Price Construction has not properly challenged her failure to do so, this issue is not properly before us on appeal. Moreover, we note that the appellate record does not include a copy of the post-hire medical history questionnaire that was completed by Newman a few days after he began working for Price Construction.[5] Therefore, there is no way for this court to determine, nor could the workers' compensation judge have determined, that the LSA-R.S. 23:1208.1 requirements for forfeiture were satisfied in this case.

Entitlement to Benefits
Aside from its forfeiture arguments, Price Construction maintains that the workers' compensation judge properly granted its motion for summary judgment relative to Newman's entitlement to workers' compensation benefits in light of his failure to produce factual support sufficient to establish that he could satisfy his burden of proving entitlement to indemnity and related medical benefits at trial.
In order to recover workers' compensation benefits, a claimant must prove by a preponderance of the evidence that a work-related accident occurred. LSA-R.S. 23:1031; Middleton v. Int'l Maint., 95-0238 (La.App. 1st Cir.10/6/95), 671 So.2d 420, 423-424, writ denied, 95-2682 (La.1/12/96), 667 So.2d 523. In addition, the claimant must establish the accident caused the injury and the injury necessitated medical treatment and/or caused a disability. LeBlanc v. Grand Isle Shipyard, Inc., 95-2452 (La.App. 1st Cir.6/28/96), 676 So.2d 1157, 1160-1161.
For purposes of the disposition of its motion for summary judgment, Price Construction did not dispute the occurrence of a work-related accident. Instead, it focused on whether Newman sustained personal injury; and if so, whether the injury was causally related to the work-related accident. Price Construction will not bear the burden of proof on these issues at trial; therefore, its burden on the motion for summary judgment does not require it to negate all essential elements of Newman's claim. Rather, Price Construction's burden on the motion for summary judgment is to point out to the court that there is an absence of factual support for one or more elements essential to Newman's claim. See LSA-C.C.P. art. 966(C)(2); Babin v. Winn-Dixie Louisiana, Inc., 00-0078 (La.6/30/00), 764 So.2d 37, 39. Thereafter, if Newman cannot provide factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and summary judgment should be granted. See LSA-C.C.P. art. 966(C)(2).
In support of its motion for summary judgment, Price Construction offered the *143 deposition testimony of Newman, as well as his medical records from Lallie Kemp Medical Center, Earl K. Long Medical Center, and North Oaks Health System (North Oaks).
Newman had testified by deposition as follows. He began working for Price Construction on January 1, 2001, primarily as a pipe layer. On Monday, February 12, 2001, to escape the path of a backhoe working in the area, Newman stepped with his right foot, wearing a muddy boot, onto the top of a curb while carrying four thirty-foot-long pieces of muddy steel rebar that were used in making curbs. As he lifted his left foot from the ground, his right foot slipped; he lost his balance and fell with his right leg landing on the top of the curb, injuring his right shin area. Blood poured down his leg onto his sock from a six-inch-long cut that was opened to the bone. Newman used a borrowed knife to cut off his pant leg, which was used to wrap the injured part of his leg. Following the accident, Newman lay on the ground for approximately 30 minutes, because his leg was hurting and he could not get up. Newman's supervisor encouraged him to complete the time remaining on his shifta couple of hoursand to seek medical attention after work if he was still in pain. Newman completed his workday before walking alone to his home, which was a little more than a mile away, because his girlfriend was unable to pick him up and his supervisor had refused to drive him home.
Upon arriving at his home, Newman used an outside hose to wash the mud off of himself, then unwrapped his leg, which was still hurting but had stopped bleeding, and took a bath. After helping him out of the bathtub, Newman's girlfriend examined his leg. At approximately eight o'clock that evening, a family member or his girlfriend took him to the emergency room at North Oaks. His girlfriend was at the hospital at the same time, but was being examined because of pregnancy-related pain that she was experiencing. While at the emergency room, Newman was evaluated for a cold and for the injury to his leg.[6] On account of his cold, a chest x-ray was taken. A shot and breathing treatment were administered, because he was having difficulty breathing. He explained that while at the hospital, his leg was washed, an over-the-counter antibiotic was applied, gauze was placed on his leg, and he was given a tetanus shot. During this visit, no x-rays were taken of Newman's leg, nor were stitches applied to his wound. The emergency room physician advised him that his leg would heal and said he should return if his leg bothered him. He was cautioned to stay off his leg for a couple of days.
Newman said the emergency room physician gave him "a paper" to bring to his supervisor. He was uncertain as to whether his need to be off work related to his cold or his leg. Newman recounted that he had returned to work on Thursday and that he continued to work for Price Construction until he was laid off a week-and-a-half later.[7] He felt pain in his leg when he walked on it for a long period of time. During this time, he did not pick up anything.
On the morning of April 30, 2001, Newman returned to the emergency room at North Oaks because of pain in his leg caused by swelling that had occurred during the night. He felt a shocking sensation *144 when he walked. After an examination and a x-ray, Newman was informed that his leg was infected and was given medication for pain and the infection. Based on the information from the x-ray, the emergency room physician recommended that Newman not return to work until he consulted with a specialist.
Newman asked his former supervisor whether Price Construction would pay for him to see a specialist, but this request was denied. Although he testified that he still experienced a sharp, needling pain when he put a lot of pressure on his leg, he said he could not afford to get further treatment or continue on his medication.
Since being laid off by Price Construction, Newman has not been employed. He testified that initially, he could not do much because of the pain in his leg. Although since then, Newman thought that he probably could work, he had not applied for employment. From time to time, he had washed cars for cash for people that he knew, but has had no work available to him lately. When asked if he was capable of working now, he responded, "I think I can, but I'm scared because I want to go to this specialist." He clarified, "I think I could do some work, but I'm not for sure because I want to see a specialist because my leg hurts putting pressure on it."
The records of North Oaks reveal that Newman visited the emergency room on February 12, 2001. His chief complaints during that visit were of flu related symptoms, including runny nose, cough, cold, fever, and aching all over. Furthermore, he complained to the triage nurse of slipping on steps at approximately 3:00 p.m. that afternoon and cutting his right leg. Nonetheless, the notes of the treating physician reflect that Newman reported that he sustained a scrape to his right leg a few days earlier. Following a physical exam and the chest x-ray, Newman was diagnosed with sinusitis. As a result, he was prescribed an antibiotic and Claritin D for congestion. Additionally, he was advised to increase his fluid intake, use a humidifier, use Advil, and rest. He would be allowed to return to work in two-three days. The records do not reflect that any medical treatment was rendered for the scrape/cut on his right leg.
Due to the lack of any reference to treatment of his right leg on February 12, 2001, Price Construction maintains that any work-related accident occurring earlier that day did not produce personal injury or, alternatively, that any such injury did not necessitate medical treatment or cause physical disability. Based on this contention, it argues that Newman would be unable to prove his claim for workers' compensation benefits.
The record shows that Newman returned to work a few days after his accident and worked for about a week-and-a-half; after that, at least initially, his reason for not continuing to work was because of his termination, which was unrelated to the accident. Nonetheless, Newman contends that his leg never properly healed despite his home treatment of the wound. Newman explained that even though he realized that his leg was not healing properly, he did not seek further medical treatment until April 30, 2001, and then only because of the extent of the swelling.
North Oaks' records for April 30, 2001, show that Newman complained of pain, redness, and swelling to his right lower leg related to a fall that occurred in February, causing a laceration to the area which never healed. The examination of his right leg revealed swelling in the mid-shin area, which Newman related to an old injury that seemingly occurred in February. The physician's diagnosis was pain in the leg secondary to a contusion/abrasion or superficial laceration to lower leg. *145 Medication for the infection and pain was prescribed, and Newman was advised to consult with an orthopedist as soon as possible, apply warm compresses to the affected area, and frequently elevate his right lower leg. A determination was not made at this time as to Newman's ability to return to work nor were restrictions imposed.
On May 9, 2001, Newman visited the emergency room, again complaining of pain in his right leg related to an old wound to the right leg. Newman reported that the pain was unbearable, he had fever at night, and he was unable to bear weight on his leg. The examination revealed swelling to the mid-lower leg anterior aspect, which was tender to palpation. The treating physician noted complaints of pain in the right lower leg at the site of an injury that occurred two-and-a-half months ago "when patient fell over curb while carrying rebar." In his history, the physician indicated that the wound had apparently healed, but that the area of the old injury was red and swollen.
During this visit, an x-ray was taken of the right tibia and fibula, because of the treating physician's concern regarding two small areas of increased density projection along the distal aspect of the tibia in the pretibial location and regarding possible cortical reactive change. A review of the x-ray revealed that these concerns were not related to osteomyelitis or post-traumatic sequela; rather, the report related that "[i]t may well be spurious."[8]
Newman's condition was noted as being unimproved. The diagnosis was an abscess[9], for which Erythromycin, an antibiotic, and pain medication were prescribed. The discharge report does not reveal if the physician felt that the abscess was causally related to the old injury. For follow-up, Newman was directed to see the orthopedist of his choice. He was directed to stay off his leg, to apply warm compresses to his leg, and to keep the leg elevated.
For purposes of the workers' compensation law, injuries are those that result from violence to the physical structure of the body. LSA-R.S. 23:1021(7)(a). The record, although conflicting, lends support to the fact that Newman may have suffered violence to the physical structure of his body in the break or abrasion of his skin on his right leg, which happened when he slipped because of the muddy working conditions while carrying rebar on February 12, 2001. Price Construction argues that the injury occurring on that date was insufficient to necessitate medical treatment or give rise to a disability. Such may have been the case; however, LSA-R.S. 23:1021(7)(a)'s definition of injury includes diseases or infections that naturally result from injuries by violence to the physical structure of the body. Although it is questionable whether Newman's injury initially necessitated medical treatment and/or caused a disability, there remain genuine issues of material fact as to whether the conditions for which Newman sought treatment on April 30 and May 9 constitute disease or infection naturally resulting from that injury and whether such disease or infection necessitated medical treatment and/or caused a disability. Given the genuine issues of material fact that are critical *146 to the determination of Newman's entitlement to workers' compensation benefits, we find that the workers' compensation judge's grant of summary judgment was improper.

Motion for Sanctions
In conjunction with Newman's appeal, Price Construction filed a motion for sanctions on July 18, 2002, for Newman's failure to timely serve it with a copy of his appellate brief.[10] Uniform Rules-Louisiana Courts of Appeal, Rule 2-14.1 provides:
Legible copies of all papers filed in a Court of Appeal by any party shall, at or before the time of filing, be delivered or mailed by the party to all other parties, or counsel of record.
The fact of such service shall be evidenced by a certificate showing, among other things, how and when such service was accomplished. Uniform Rules-Louisiana Courts of Appeal, Rule 2-14.2.
The certificate attached to Newman's appellate brief reveals that a copy of his brief was mailed, postage prepaid, to counsel for Price Construction on Thursday, July 11, 2002, the date on which Newman's brief was filed with this court. Price Construction disputes the accuracy of such certification in light of the Monday, July 15, 2002 postmark placed on the envelope used in forwarding Newman's brief. Newman's apparent failure to place the document in the mail on or before the date of filing, July 11, 2002, was classified by Price Construction as an inexcusable oversight, which it deemed prejudicial to future filings. In its motion, Price Construction suggested the following as an appropriate sanction in this case: forfeiture of Newman's right to oral argument, payment of legal expenses incurred in the filing of this motion, and an extension of its briefing delay. Because his appellate brief was not filed timely, Newman was denied his right to oral argument. Moreover, Price Construction filed its brief within the briefing delay set by this court, thus rendering the need for an extension moot. The Uniform RulesCourts of Appeal do not specifically authorize any sanctions for a party's failure to comply with Rules 2-14.1 and/or 2-14.2. Given this lack of specific authorization and the relatively short delay between the filing and the mailing, we decline to impose any sanctions in this case.

Decree
For the foregoing reasons, the summary judgment is reversed, and the matter is remanded to the Office of Workers' Compensation Administration for further proceedings consistent with this judgment. The motion for sanctions is denied. Costs of this appeal are assessed to Richard Price Construction.
MOTION FOR SANCTIONS DENIED. REVERSED AND REMANDED.
NOTES
[1] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The workers' compensation judge in this case was Honorable Elizabeth A. Warren of District 6S.
[3] Medical records disclosed that during his emergency room visit for treatment of the latter bite, his wound was cleaned and antibiotic ointment was applied.
[4] LSA-R.S. 23:1208.1 provides:

Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.
[5] Newman recalled having completed a post-hire medical history questionnaire a few days after being hired. He testified that he had answered the questions truthfully to the best of his knowledge, with the assistance of his girlfriend, who was a nurse's aide. Counsel for Price Construction indicated in Newman's deposition that a copy of the questionnaire would be attached as an exhibit, but such attachment was not made part of the appellate record.
[6] Newman explained that he had a cold when this injury occurred.
[7] According to Newman, he was laid off because of his refusal to apologize in connection with a disagreement that he had with a co-worker.
[8] Osteomyelitis is inflammation of the bone marrow and adjacent bone. PDR Medical Dictionary 1269 (1st ed.1995). Sequela means a condition following as a consequence of a disease. PDR Medical Dictionary at 1600. Spurious means false or not genuine. PDR Medical Dictionary at 1659.
[9] Abscess is defined as a circumscribed collection of purulent exudates appearing in an acute or chronic localized infection, caused by tissue destruction and frequently associated with swelling and other signs of inflammation. PDR Medical Dictionary at 5.
[10] In its motion, Price Construction also sought to have Newman's appeal dismissed, which was denied by this court. Newman v. Richard Price Constr., 02-0995 (La.App. 1st Cir.9/25/02) (unpublished).