WELCH, J.
Claimant/Appellant, William Earl Harrison, appeals from a grant of partial summary judgment by the Office of Workers' Compensation ("OWC") in favor of Plant *3 Performance Services, L.L.C., and its workers' compensation insurer, CNA, (collectively, "P2S"), forfeiting his right to workers' compensation benefits under La. R.S. 23:1208, based upon a finding that he made false statements or representations in connection with his claim. For the following reasons, we affirm.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On April 14, 2013, Mr. Harrison had a work-related accident while in the course and scope of his employment with P2S and sustained injuries as a result. Mr. Harrison filed a disputed claim for compensation in August 2013. Pursuant to a consent judgment signed September 9, 2014, P2S paid Mr. Harrison indemnity benefits, and the workers' compensation judge ("WCJ") dismissed Mr. Harrison's disputed claim for compensation, with prejudice.
Thereafter, P2S filed a disputed claim for compensation on June 25, 2015, informing the OWC that it had terminated Mr. Harrison's benefits for fraud, and alleging that Mr. Harrison willfully made false statements or representations regarding his injuries, physical condition, and ability to work to his healthcare providers for the purpose of obtaining workers' compensation benefits, in violation of La. R.S. 23:1208.[1]
Mr. Harrison denied committing fraud via a notice of disagreement and filed a disputed claim for compensation against P2S on July 17, 2015, alleging P2S was using allegations of fraud to delay or terminate paying his workers' compensation benefits.[2] The WCJ granted an unopposed motion to consolidate the two suits in an order signed on September 25, 2015.
On July 15, 2016, P2S filed a motion for summary judgment asserting *4 that Mr. Harrison committed fraud for the purpose of obtaining workers' compensation benefits by willfully making false statements or representations, in violation of La. R.S. 23:1208. P2S alleged Mr. Harrison willfully made false statements that he was not working and that he was unable to work, when he was in fact able to work and had been working. Alternatively, P2S argued that Mr. Harrison could not prove that he was entitled to supplemental earnings benefits because he was capable of earning 90% of his pre-injury wages. P2S requested that the OWC dismiss Mr. Harrison's disputed claim for compensation.
On July 21, 2016, Mr. Harrison filed a motion for summary judgment alleging that P2S was in bad faith for arbitrarily and capriciously terminating his workers' compensation benefits. Mr. Harrison alleged P2S had no basis for the fraud claim brought against him in P2S's disputed claim for compensation. Mr. Harrison argued that he did not make any false statements or representations to his healthcare providers and that after learning from his healthcare providers that he did not misrepresent his injuries, P2S continued to prosecute the fraud claim. Mr. Harrison requested that P2S's fraud claim be dismissed and that P2S be adjudged in bad faith for terminating Mr. Harrison's workers' compensation benefits and be ordered to pay penalties and attorney's fees in accordance with La. R.S. 23:1201(C).
Ultimately, P2S's motion for summary judgment was withdrawn, and the WCJ denied Mr. Harrison's motion for summary judgment as untimely filed.
On October 3, 2016, P2S filed a second motion for summary judgment alleging that Mr. Harrison committed fraud for the purpose of obtaining workers' compensation benefits by willfully making false statements or representations, in violation of La. R.S. 23:1208. Alternatively, P2S argued that Mr. Harrison could not prove that he was entitled to supplemental earnings benefits because he was capable of earning 90% of his pre-injury wages. P2S averred that it had taken the deposition of Mr. Harrison four times.[3] During the fourth deposition, on August 7, 2015, P2S alleged Mr. Harrison made numerous false statements related to his work status, physical capabilities, and limitations; specifically, Mr. Harrison testified that he was not working and could not work due to his physical limitations, and he denied leaving the State of Louisiana for any reason. P2S argued that at the time of the August 7, 2015 deposition, however, Mr. Harrison was working in West Virginia as a pipefitting foreman with Grand Isle Shipyard, Inc., in excess of 40 hours per week, more than 8 hours per day, and was paid $28.00 per hour. P2S further argued that since his OWC benefits were terminated in June 2015, Mr. Harrison worked for four companies earning more than his pre-injury wages.
On October 7, 2016, Mr. Harrison filed a second motion for summary judgment, alerting the OWC that P2S based its fraud claim on allegations that P2S had not alleged in its disputed claim for compensation filed on June 25, 2015. Mr. Harrison argued that his medical records and the depositions of his treating physicians showed there was no support for P2S's fraud claim. Mr. Harrison sought summary judgment alleging that P2S was in bad faith for arbitrarily and capriciously terminating his workers' compensation benefits and sought a dismissal of P2S's fraud claim.
Thereafter, on October 17, 2016, P2S filed an amended petition to supplement the disputed claim for compensation it had previously filed on June 25, 2015. In the amended petition, P2S alleged that Mr. Harrison willfully made false statements or representations regarding his physical ability to work full time, performing any work for wages, and traveling out of state.[4] The WCJ granted P2S leave to file the amended petition.
On January 13, 2017, the WCJ held a hearing on the parties' cross-motions for summary judgment; at the conclusion of the hearing, the WCJ granted, in part, both motions for summary judgment. The WCJ granted summary judgment in favor of Mr. Harrison and against P2S, finding no genuine issue of material fact that P2S was arbitrary and capricious in terminating his workers' compensation benefits on June 25, 2015. The WCJ found Mr. Harrison entitled to reinstatement of indemnity benefits from June 25, 2015 to August 7, 2015, totaling $2,747.03, together with 4% interest from June 25, 2015 until paid. The WCJ ordered penalties to Mr. Harrison in the amount of $2,000.00 for the termination of his indemnity benefits, $2,000.00 for the termination of his medical benefits, and $6,000.00 in attorney's fees, plus the cost of any deposition taken by Mr. Harrison, together with 4% interest from the date of the award until paid.
The WCJ also granted summary judgment in favor of P2S and against Mr. Harrison, finding no genuine issue of material *5 fact that Mr. Harrison committed fraud in violation of La. R.S. 23:1208 when he intentionally misrepresented his employment status and ability to work for the purpose of obtaining workers' compensation benefits in his deposition testimony given on August 7, 2015. The WCJ ordered Mr. Harrison's workers' compensation benefits forfeited from August 7, 2015 forward.
The WCJ signed a judgment on January 27, 2016 in accordance with is ruling.[5] Mr. Harrison now appeals the January 27, 2016 judgment of the OWC, contending the WCJ erred in its determination that there was no genuine issue of material fact that he committed fraud in violation of La. R.S. 23:1208 and denying him workers' compensation benefits from August 7, 2015 forward. Mr. Harrison also argues the WCJ erred by allowing P2S to supplement their allegations of fraud to include statements made after P2S originally filed its disputed claim for compensation.[6]
LAW AND DISCUSSION
Standard of Review-Motion for Summary Judgment
The determination of motions for summary judgment in workers' compensation cases is subject to the same standards utilized in ordinary civil actions. See Lilly v. Allied Health Care , 2007-0590 (La. App. 1st Cir. 6/6/08), 991 So.2d 1096, 1097-98, writ denied, 2008-2081 (La. 12/12/08), 996 So.2d 1117. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the OWC's determination of whether summary judgment is appropriate. A claim under La. R.S. 23:1208 is appropriate for resolution by way of summary judgment. La. C.C.P. art. 966(A)(2) ; La. R.S. 23:1317(A) ; Revere v. Dolgencorp, Inc., 2004-1758 (La. App. 1st Cir. 9/23/05), 923 So.2d 101, 103-104.
The burden of proof is on the moving party. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material *6 can be seen only in light of the substantive law applicable to the case. Revere, 923 So.2d at 104.
Forfeiture for Violation of La. R.S. 23:1208 (Assignments of Error Nos. 1 & 2)
Louisiana Revised Statutes 23:1208(A) provides that "[i]t shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or any other person, to willfully make a false statement or representation." Louisiana Revised Statutes 23:1208 applies to any false statement or misrepresentation. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians or insurers, when made willfully or deliberately for the purpose of obtaining benefits. Moreover, the statute contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentation. Revere, 923 So.2d at 104. An employee violating La. R.S. 23:1208 shall, upon determination by a WCJ, forfeit any right to workers' compensation benefits. La. R.S. 23:1208(E). Forfeiture of workers' compensation benefits is effective from the time of the misrepresentation prospectively, rather than the time of the accident. Leonard v. James Indus. Constructors, 2003-0040 (La. App. 1st Cir. 5/14/04), 879 So.2d 724, 730, writ denied, 2004-1447 (La. 9/24/04), 882 So.2d 1139.
The three requirements for the forfeiture of the right to workers' compensation benefits under Section 1208 are: (1) there is a false statement or representation; (2) it is willfully made; and, (3) it is made for the purpose of obtaining or defeating any benefit or payment. Varnado v. Sanderson Farms, Inc., 2014-1305 (La. App. 1st Cir. 3/6/15), 166 So.3d 340, 343. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. A false statement that is inconsequential to the claim at issue may indicate that the statement was not willfully made for the purpose of obtaining benefits. An inadvertent and inconsequential false statement would not result in forfeiture of benefits. Newman v. Richard Price Const., 2002-0995 (La. App. 1st Cir. 8/8/03), 859 So.2d 136, 141.
Because forfeiture of benefits is a harsh remedy, statutory forfeiture must be strictly construed. An employer has the burden of proving each element within the statute, and the lack of any one of the elements is fatal to the employer's avoidance of liability. Varnado, 166 So.3d at 343. As the moving party on the issue of Mr. Harrison's fraud, P2S had the burden in this summary judgment proceeding to establish that no material facts were in dispute and that under the undisputed facts, Mr. Harrison willfully misrepresented his employment status and ability to work, as contemplated by La. R.S. 23:1208, thus entitling P2S to judgment as a matter of law.
Mr. Harrison contends the WCJ erred in finding that he committed fraud in violation of La. R.S. 23:1208 and erred in determining that he forfeited all workers' compensation benefits from August 7, 2015 forward. At the August 7, 2015 deposition, counsel for P2S questioned Mr. Harrison extensively regarding his employment status and ability to work. When asked, "[w]hat are the things that are preventing you from working now?" Mr. Harrison responded, "I have little strength in my arm. I have to protect it. Standing for a long time irritates it. Sitting still for a long time irritates it. That would seem to be enough *7 there. I have one good arm and I have one bad arm." Mr. Harrison testified that his pain interfered with his quality of life because he "[c]an't work" and "would love to work" and "would love to be able to have money in [his] pocket besides waiting on a tiny little check every week."
When asked what specifically prevented him from doing any work at all, Mr. Harrison stated that he "would need a job similar as far as income that [he] had before" because he "was paid well as a pipefitter" but that now he "cannot do that work." Counsel for P2S inquired whether there was a job he could perform, to which Mr. Harrison responded, "[i]f there was one that met my restrictions that the doctors give me, I suppose I could." When questioned whether he could perform any job other than a pipefitter, such as operating a cash register, Mr. Harrison testified, "I don't know if I can stand there for eight hours or whatever it is they stand there and turn back and forth. There is a lot of shifting. I don't know if I can do that." Counsel for P2S asked whether Mr. Harrison could perform sedentary work, lift anything overhead, alternate between sitting and standing, and/or not have to lift more than five pounds. Mr. Harrison responded, "[i]f there's a job that fits my restrictions and the company will look at my history and see that I'm still under a doctor's care and they will hire me, I can probably do that job."
Counsel for P2S asked Mr. Harrison, "[a]re you working now?" to which he responded, "[n]o." Counsel for P2S then asked Mr. Harrison, "[a]re you doing anything that someone is paying you in kind, meaning with an exchange of services of some type?" to which he responded, "[n]o." Counsel for P2S also asked Mr. Harrison whether he had left the State of Louisiana "on any trips for one reason or another that you don't deem it to be a vacation," since his last deposition (taken July 24, 2014), to which Mr. Harrison responded, "[n]o."
In support of its motion for summary judgment, P2S submitted Mr. Harrison's employment records, which show that Mr. Harrison worked for Grand Isle Shipyard, Inc. in West Virginia from July until September 2015. Mr. Harrison applied to work for Grand Isle Shipyard on May 30, 2015, was hired on July 20, 2015, began work as a foreman on July 21, 2015, was paid $28.00 per hour, and worked there until September 23, 2015, when he voluntarily resigned. At the time of the August 7, 2015 deposition, Mr. Harrison had been an employee of Grand Isle Shipyard for sixteen days and had just returned to Louisiana from West Virginia after working a total of forty-four hours over five days. Mr. Harrison's employment records further show that he worked for Pala Interstate, L.L.C. as a pipefitter and foreman,[7] for Pipe & Steel Industrial as a crew member,[8] and for Performance Contractors for work on a specific project.[9] This evidence clearly contradicts Mr. Harrison's deposition testimony regarding his employment status and ability to work.
*8 Mr. Harrison argued in opposition that his testimony given during the August 7, 2015 deposition contained "inadvertent misstatements" regarding his employment status and ability to work. Mr. Harrison contends the "inadvertent misstatements" were not made willfully, were not spoken with the intent to gain benefits (because P2S had already terminated his workers' compensation benefits), and were not relevant to P2S's fraud claim, as the "inadvertent misstatements" involved matters that occurred after P2S terminated his workers' compensation benefits.
To cure the alleged "inadvertent misstatements" made during his deposition, Mr. Harrison executed an affidavit on October 31, 2016. Therein, Mr. Harrison testified "he did not willfully try to deceive or misrepresent his work status in an effort to obtain benefits" in his deposition testimony given on August 7, 2015. Mr. Harrison testified that at the time of the deposition, he was receiving job training at Grand Isle Shipyard and did not know whether he could physically perform the job as a pipefitting foreman. Specifically, Mr. Harrison testified "he applied for a job as a scheduler with Grand Isle Shipyard," and "when he traveled to begin the job as a scheduler, GIS informed Harrison there were no positions available as a scheduler but there was ability for a pipefitting foreman." Mr. Harrison testified that he "had to undergo on the job training as a pipefitting foreman as it was a job he had never performed and was subject to a thirty day trial period," and, he was "unsure if he could perform the physical duties of a pipefitting foreman or how long he would work in that capacity." Mr. Harrison then testified that "following [...] this on the job training, he returned to Louisiana and gave a deposition on August 7, 2015." Mr. Harrison testified that he then "sought employment with PALA Interstate and began working as a pipefitting foreman," and also found "employment with Performance Contractors." Mr. Harrison stated, "he was forced to work in pain." The crux of Mr. Harrison's affidavit is that he inadvertently misstated that he was not working, nor receiving a paycheck, at the time of the August 7, 2015 deposition because on that date, he testified that he was receiving job training and did not know if he could physically perform the job for which he was hired.
Inherent in the resolution of a La. R.S. 23:1208 case is the determination of whether a claimant's allegedly false misrepresentation is "willful." In making this determination and considering the exhibits filed in support of the motion, we are mindful that the WCJ (and the appellate court on appeal) cannot make credibility determinations on a motion for summary judgment. Revere, 923 So.2d at 107. In ruling on a motion for summary judgment, the court must generally accept an affiant's testimony or affidavit as true. State, Dep't of Transp. & Dev. v. Cecil, 42,433 (La. App. 2nd Cir. 9/19/07), 966 So.2d 131, 134, writ denied, 2007-2063 (La. 12/14/07), 970 So.2d 536. This court has held that a supplemental or subsequent affidavit in contradiction to prior deposition testimony is not sufficient to create an issue of fact precluding summary judgment without some explanation or support for the contrary statements. LeBlanc v. Dynamic Offshore Contractors, Inc ., 626 So.2d 16, 21 (La. App. 1st Cir. 1993) ; Douglas v. Hillhaven Rest Home, Inc., 97-0596 (La. App. 1st Cir. 4/8/98), 709 So.2d 1079, 1083, writ denied, 98-1793 (La. 10/30/98), 727 So.2d 1161 ; Terrebonne v. Floyd, 99-1036 (La. App. 1st Cir. 5/23/00), 767 So.2d 754, 757. When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a *9 motion for summary judgment. Terrebonne, 767 So.2d at 757.
In the affidavit, Mr. Harrison testified that he traveled out of the State of Louisiana to undergo job training at Grand Isle Shipyard in West Virginia, which statement contradicts his prior deposition testimony wherein he testified that he had not traveled out of the State of Louisiana for any reason. In his affidavit, Mr. Harrison testified that he underwent "job training" at Grand Isle Shipyard, worked as a pipefitting foreman at PALA Interstate, and also worked at Performance Contractors. All of these statements contradict his prior deposition testimony wherein he stated that he was not working and not doing anything for which he was being paid. As presented by P2S in support of its motion for summary judgment, Mr. Harrison was in fact working as a foreman and paid by Grand Isle Shipyard for his work.
Mr. Harrison's affidavit clearly contradicts, rather than supplements, his deposition testimony given on August 7, 2015. The affidavit is not sufficient evidence to create a genuine issue of material fact. Given the records and exhibits herein, the principles which govern our de novo consideration, we find that the record undisputedly establishes that Mr. Harrison willfully made false statements or representations for the purpose of obtaining workers' compensation benefits in violation of La. R.S. 23:1208.
Amendment of Petition (Assignment of Error No. 3)
Mr. Harrison contends the WCJ erred in allowing P2S to amend its disputed claim for compensation, arguing P2S's "original claims were baseless, had no connexity to the original claims, and the claimant was given no opportunity for contradictory hearing prior to the amendment."
Louisiana Code of Civil Procedure article 1151 provides that a plaintiff may amend his petition after an answer has been filed by leave of court, and a defendant shall plead his response to an amended petition within ten days after service of the amended petition. Here, P2S filed its amended petition on October 17, 2016. Mr. Harrison filed a motion to strike the amended petition on October 24, 2016. The WCJ set the motion to strike for hearing on November 18, 2016. P2S filed a motion for leave of court to file the amended petition on November 7, 2016, which the trial court granted on November 9, 2017.
Amendments to pleadings should be allowed if (1) the movant is acting in good faith; (2) the amendment is not being used as a delaying tactic; (3) the opponent will not be unduly prejudiced; and, (4) the trial will not be unduly delayed. Rainey v. Entergy Gulf States, Inc., 2001-2414 (La. App. 1st Cir. 11/8/02), 840 So.2d 586, 589-590, on reh'g, 2001-2414 (La. App. 1st Cir. 6/25/04), 885 So.2d 1193. A trial judge has much discretion in granting amendments to pleadings after an answer has been filed; thus, a trial judge's ruling on granting an amendment to the pleadings will not be disturbed on appeal unless an abuse of discretion has occurred that indicates a possibility of resulting injustice. Rainey, 840 So.2d at 589.
There is no indication that P2S acted in bad faith in amending its petition. After Mr. Harrison testified on August 7, 2015 that he was not working and had not traveled outside of the State of Louisiana, P2S amended its petition to allege the false statements or representations made by Mr. Harrison. There is also no indication that the amendment was used as a delaying tactic-two days prior to granting P2S leave to amend its petition, the WCJ granted the parties' joint motion to continue trial to February 15, 2017. Finally, no prejudice resulted to Mr. Harrison based *10 on the amended petition because he was permitted to answer, and did file an answer, to P2S's amended petition. Also, Mr. Harrison was on notice of the allegations contained in the amended petition because those claims formed the basis of P2S's second motion for summary judgment, filed on October 3, 2016. We cannot say the WCJ abused her discretion in granting P2S leave to amend its petition, nor is there a possibility of resulting injustice. See Rainey, 840 So.2d at 589.
DECREE
For the foregoing reasons, the January 27, 2016 judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are assessed to the claimant/appellant, William Earl Harrison.
AFFIRMED.

See OWC case no. 15-04049, District 5, Parish of Livingston.

See OWC case no. 15-04811, District 5, Parish of Livingston.

The depositions were taken on February 20, 2014, July 24, 2014, April 22, 2015, and August 7, 2015.

Mr. Harrison filed a motion to strike P2S's amended petition. The WCJ set the motion to strike for hearing on November 18, 2016; however, prior to the hearing, the WCJ granted P2S leave to file the amended petition.

The January 27, 2016 judgment is a final judgment because it disposes of the entire case as to the parties. Accordingly, the WCJ made the express determination that "[t]his judgment is designated as a final judgment and dispositive of all issues." Therefore, our appellate jurisdiction extends to this appeal. See La. C.C.P. arts. 1841 and 2083.

P2S filed a notice of a suspensive appeal, but subsequently and voluntarily dismissed that appeal.

Mr. Harrison worked as a foreman at Pala from September 23, 2015 to October 5, 2015, when he was terminated. Pala rehired Mr. Harrison on October 9, 2015 as a pipefitter, promoted him to foreman on October 19, 2015, and terminated him on December 21, 2015.

Mr. Harrison worked for Pipe & Steel Industrial as a crew member from March 11, 2016 to March 18, 2016.

Mr. Harrison began work for Performance Contractors on May 12, 2016 and was subject to a reduction in force at the completion of the project unless he applied for and was reassigned to another job.